IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:15-CR-56 |
| v. | ) | |
| | ) | |
| AMADO VALDEZ-MORALES, | ) | |
| MAYRA EDITH BLAIR, | ) | (VARLAN / SHIRLEY) |
| LUIS CARVAJAL, | ) | |
| BERTHA DEL PILAR VARGAS, | ) | |
| MARTIN AYALA, | ) | |
| FRANCISCO JAVIER CASTRO-REYES, and | ) | |
| LUCERO BELTRAN-CHIMAL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

All pretrial motions in this case have been referred to the Magistrate Judge pursuant to 28

U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the

District Court as may be appropriate. This case is before the Court on the following pretrial

motions:

(1) Defendant Mayra Blair's Motion for Bill of Particulars [Doc. 44], filed on April 16, 2015;

(2) Motion by Defendant [Lucero Beltran-Chimal] for "Pinpoint" Discovery [Doc. 101], filed on October 8, 2015;

(3) Defendant Mayra Edith Blair's Renewed Motion for Bill of Particulars [Doc. 111], filed on October 20, 2015; and

(4) Motion by Defendant Lucero Beltran-Chimal for Bill of Particulars [Doc. 113], filed on October 21, 2015.

Defendants Bertha Del Pilar Vargas [Doc. 120], Martin Ayala [Doc. 121], Amado Valdez-Morales [Doc. 122], Luis Carvahal [Doc. 124], Francisco Javier Castro-Reyes [Doc. 125] and Mayra Edith Blair [Doc. 126] have moved to join in the motions for a bill of particulars and pinpoint discovery made by Defendant Beltran-Chimal. The Government has responded [Docs. 47 and 132] in opposition to both a bill of particulars and pinpoint discovery. The parties appeared to argue these motions before the undersigned on May 4, 2015, (only Doc. 44) and November 19, 2015. At the conclusion of these hearings, the Court took the motions under advisement.

After reviewing the briefs, arguments, and relevant case law, the Court finds that the Third Superseding Indictment provides sufficient notice of the charges, except that the Government must designate which tax returns it contends are fraudulent. The Court also concludes that the Government has provided the Defendants with the means to "pinpoint" the relevant discovery for themselves.

## I. BACKGROUND

Count One of the Third Superseding Indictment [Doc. 85] charges the Defendants with conspiring to submit false claims, namely false and fraudulent federal income tax returns, from 2012 to August 8, 2015. Count Two alleges that the Defendants conspired to commit mail fraud over that same time period by mailing false IRS Forms W-7 and false federal income tax returns, which caused the IRS to mail fraudulently-obtained Individual Tax Identification Numbers (ITIN's) and treasury checks. Count Three charges the Defendants with conspiring to commit wire fraud between 2012 and August 8, 2015 by electronically filing false federal income tax

returns. Count Four states that the Defendants conspired to commit money laundering between 2012 and August 8, 2015, with the proceeds of the illegal schemes described in Counts One through Three. Finally, Count Five charges Defendant Valdez-Morales with illegal reentry into the United States after having previously been deported.

## II. ANALYSIS

The Defendants request a bill of particulars, arguing that the instant charges are insufficient to permit them to prepare a defense, to avoid surprise at trial, and to protect against a future double jeopardy violation. They also ask the Court to order the Government to state which discovery applies to each Defendant. The Court will first address the Defendants' motions to join in the motions of Defendant Beltran-Chimal and will then address whether a bill of particulars and/or pinpoint discovery are appropriate in this case.

### A. Motions to Join in Codefendant's Motions

Defendants Bertha Del Pilar Vargas [Doc. 120], Martin Ayala [Doc. 121], Amado Valdez-Morales [Doc. 122], Luis Carvahal [Doc. 124], Francisco Javier Castro-Reyes [Doc. 125] and Mayra Edith Blair [Doc. 126] have moved to join in the requests for a bill of particulars and pinpoint discovery made by Defendant Beltran-Chimal. These Defendants state that they are similarly situated due to the large amount of discovery in this case and they request the same relief.[1] The Court finds the Defendants' motions to join in Defendant Beltran-Chimal's requests

---

[1] Defendants Vargas and Blair list additional items for which they seek particularization in a bill of particulars.

3

for a bill of particulars and for pinpoint discovery to be well-taken, and they [**Docs. 120, 121, 122, 124, 125, & 126**] are **GRANTED**. The Court now turns to the merits of these motions.

## B. Bill of Particulars

Pursuant to Federal Rule of Criminal Procedure 7(f), the Defendants ask [Docs. 44, 111, & 113][2] the Court to order the Government to provide a bill of particulars specifying which tax returns are alleged to be fraudulent, the overt acts and details regarding overt acts committed in furtherance of the conspiracies, and the names of all unindicted coconspirators. Additionally, Defendant Blair asks that the Government identify all documents that it intends to introduce at trial. The Defendants argue that this information is necessary to permit them to prepare their defense, to protect against potential double jeopardy violations, and to avoid surprise at trial. They maintain that a bill of particulars is especially necessary in this case, which is factually complex and involves multiple defendants and voluminous discovery.

The Government responds [Docs. 47 & 132] that the Defendants provide no legal or factual basis for a bill of particulars. It argues that the instant Indictment is sufficiently specific to inform the Defendants of the charges against them, to protect them from double jeopardy, and to permit them to prepare for trial. Moreover, the Government maintains that it has provided a "speaking indictment," which details how the offenses were committed and has disclosed full discovery, which obviates the need for any further particularization. It contends that the

---

[2] The Court observes that Defendant Vargas [Doc. 120] asks for specific particularization in her motion to join in Defendant Beltran-Chimal's request for a bill of particulars. The undersigned will consider those specific requests as a part of this analysis.

4

Defendants' requests for particularization are more in the nature of civil interrogatories and have no place in a criminal prosecution.

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "fully, directly, and expressly[.]" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); Landham, 251 F.3d at 1079. Moreover, the statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487(1888)); Landham, 251 F.3d at 1079.

Federal Rule of Criminal Procedure 7(f) states that "[t]he court may direct the government to file a bill of particulars" and that "[t]he government may amend a bill of particulars subject to such conditions as justice requires." "A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993). The granting of a bill of particulars is within the court's discretion. See id. (holding that the appellate court reviews the

denial of a bill of particulars for an abuse of discretion). The level of detail in the indictment can be a basis for denying the motion for a bill of particulars. Id. Additionally, "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." United States v. Paulino, 935 F.2d 739, 750 (6th Cir. 1991), superseded on other gnds by statute, United States v. Caseslorente, 220 F.3d 727 (6th Cir. 2000) (on sentencing issue).

First, the Court observes that the Defendants do not allege, and the undersigned does not perceive, any deficiency in the statement of the elements of the offenses charged. The controversy in this case surrounds the sufficiency of the facts alleged in the indictment. The Government argues that it has provided a speaking indictment that gives more than the constitutionally required facts to indicate the specific offenses with which the Defendants are charged. The Defendants disagree and request identification and/or particularization of (1) the fraudulent federal income tax returns and the fraudulently obtained Individual Tax Identification Numbers (ITIN's), (2) the overt acts and details regarding the overt acts committed in furtherance of the alleged conspiracies, (3) the names of unidentified co-conspirators, and (4) the documents that the Government intends to present at trial. The Court examines the need for particularization as to each of the four categories of information requested by the Defendants.

### (1) Fraudulent Income Tax Returns and Fraudulently Obtained ITIN's

Defendant Blair asks the Court to order the Government to designate which federal income tax returns it contends are false or fraudulent. She argues that the conspiracy to submit false claims in Counts 1 is alleged to have occurred from 2012 to August 2015. At the November 19 hearing, Attorney Weiss argued that the Defendants received numerous tax returns in discovery, that only some of these tax returns are alleged to be fraudulent, and that counsel

Case 3:15-cr-00056-TAV-CCS Document 147 Filed 03/04/16 Page 6 of 22 PageID #: 1307

needs to know which returns the Defendant will have to defend against in order to prepare for trial. In her motion, Defendant Blair also asks that the Government identify the ITIN's, along with the names associated with those ITIN's, that the Government alleges were fraudulently obtained. She maintains that the fact that discovery spans four terabytes of materials only exacerbates her problem, rather than solving it. In this regard, she directs the Court to a case from the Second Circuit and cases from several district courts, in which the trial court ordered the Government to specify, among the thousands and hundreds of thousands of documents provided in discovery, which documents, claims, or portions of a report it alleged to be fraudulent. See United States v. Bortnovsky, 820 F.2d 572, 574 (8th Cir. 1987); United States v. Savin, No. 00CR45, 2001WL243533, *3 (S.D.N.Y Mar. 7, 2001) (ordering government to particularize, within the 100,000 documents provided in discovery, those financial transactions over a six-year-period that are alleged to be improper); United States v. Nachamie, 91 F. Supp. 2d 565, 574 (S.D.N.Y. 2000) (ordering government to specify which of 2000 Medicare claims were fraudulent); United States v. Risk, 672 F. Supp. 346, 360 (S.D. Ind. 1987) (ordering government to particularize the portions of the bank report it alleges are false). Defendant Blair contends that although the Indictment may be constitutionally adequate, the Government's failure to specify which tax returns submitted over a two-to-three-year period that it claims are fraudulent hinders her ability to prepare her defense and increases the chance of unfair surprise at trial.

The Government responds that the requested particularization is unnecessary because the Indictment is detailed and that it has provided full discovery.

The Court finds that the Government should particularize which federal income tax returns it alleges are false or fraudulent. The Third Superseding Indictment alleges that the Defendants obtained fraudulent ITIN's and then used those ITIN's to prepare "bogus" tax returns. It contends that "[i]n recognition of the illicit nature of such returns, MAYRA MORENO INSURANCE [Defendant Blair's business] charged more for their preparation than would otherwise have been charged for a legitimate tax return." [Doc. 85, ¶21] From this, the Court infers that not every tax return prepared at Defendant Blair's business was fraudulent.[3] Thus, the Defendants must guess which of the tax returns filed over a two and one-half year period are the ones the Government contends are false.

The Eighth Circuit grappled with a similar question in <u>United States v. Bortnovsky</u>, 820 F.2d 572 (8th Cir. 1987). There, defendants were charged with mail fraud, conspiring to defraud the United States, and RICO violations for "engaging in a scheme to defraud the Federal Emergency Management Administration and the New York Property Insurance Underwriting Association through the submission of false and inflated insurance claims." <u>Id.</u> at 573. The court held that the defendants could not adequately prepare their defense because, despite producing over 4,000 documents in discovery, the government did not reveal the dates of the staged burglaries or identify the three allegedly false documents. <u>Id.</u> at 574. The court acknowledged that generally a detailed indictment and provision of full discovery obviates the need for a bill of particulars. <u>Id.</u> However, it held that under the circumstances of this case, a

_____

[3] The Indictment also alleges that Defendant Blair was not a registered tax preparer and that, thus, she either forged or used without permission the name of a registered preparer when filing the fraudulent returns. [Doc. 85, ¶22] In this regard, the Government may take the position that every tax return filed by Defendant Blair was fraudulent because she was not a registered tax preparer. The Court requires that the Government specify which tax returns filed by the Defendants are part of the scheme involving fraudulent ITIN's alleged in the Indictment.

bill of particulars was "vital to appellants' understanding of the charges pending and to the preparation of a defense[.]" Id. at 575. C.f., United States v. Dolan, No. 95-1769, 1996WL599819, *2 (6th Cir. Oct. 17, 1996) (distinguishing Bortnovsky because the government provided defendant with a binder with all the documents and files used in drafting the charges and the indictment listed the patients' names, dates, and amounts overbilled).

In the instant case, Defendant Blair's insurance business, which operated at three locations, apparently also offered tax preparation services. The Court finds that knowledge of which tax returns the Government is alleging to be fraudulent and part of the scheme described in the Indictment is essential for the Defendants to prepare their defense at trial. Some of the other information requested by the Defendants, such as the fraudulent ITIN's, the names associated with the ITIN's, and the addresses to which the refund checks were to be mailed, can be obtained from the allegedly fraudulent tax returns, once these are designated. Accordingly, the Defendants' request that the Government designate which tax returns are allegedly fraudulent and a part of the scheme alleged in the Indictment is **GRANTED**. The Court finds that the Government may provide a bill of particulars designating the fraudulent tax returns directly to defense counsel, thereby avoiding the disclosure of personal identifiers. See generally, Fed. R. Crim. P. 49.1(a); see also 3A Charles Allen Wright & Andrew D. Leipold, Federal Practice and Procedure § 132 (4th ed. 2008) (providing that a "bill of particulars is not a part of the indictment or the charge to the jury").

*(2) Overt Acts*

The bulk of the Defendants' specific requests seek particularization of their roles in the alleged conspiracies. In this regard, they ask for specification of the overt acts that they committed in furtherance of the alleged conspiracies, especially any overt acts that indicate they possessed the required mens rea, as well as the dates and locations when these overt acts occurred. Defendant Beltran-Chimal observes that that she is not mentioned in the "Manner and Means" section of any of the counts with which she is charged. She also contends that the lack of detail in the charges could cause the jury to be confused as to which conspiracy the proof at trial is being presented.

The Government responds that it is not required to prove, much less charge, an overt act in furtherance of the conspiracy. Moreover, it contends that the Indictment describes generally how the conspiracies occurred.

The Court observes that "a defendant is not entitled to discover all the overt acts that might be proven at trial." Salisbury, 983 F.2d at 1375. A request for a bill of particulars likewise may not be granted if the purpose "is to obtain a list of the Government's witnesses or to discover all of the overt acts that might be proven at trial." United States v. Musick, 291 F. App'x 706, 724 (6th Cir. 2008). With respect to a conspiracy charged under 18 U.S.C. §286, the government does not have to prove an overt act in order to show a conspiracy to defraud the United States. See United States v. Dedman, 527 F.3d 577, 593 (6th Cir. 2008). The same is true for mail and wire fraud conspiracies in violation of 18 U.S.C. §1349, United States v. Rogers, 769 F.3d 372, 380-81 (6th Cir. 2014) (holding the government does not have to prove an overt act), and money laundering conspiracies charged under 18 U.S.C. §1956(h), United States v. Bazazpour, 690 F.3d 796, 802

(6th Cir. 2012) (holding that the indictment does not have to charge an overt act in furtherance of a money laundering conspiracy under §1956(h); Whitfield v. U.S., 543 U.S. 209, 214 (2005) (holding that a conviction under §1956(h) does not require the government to prove an overt act). Accordingly, because there is no requirement that the Government prove an overt act, there is likewise no need to particularize an indictment that fails to do so.

Despite the fact that the Government need not allege overt acts with regard to Counts One through Three, each of these counts contain a section explaining the "manner and means" by which the conspiracies were conducted. Moreover, all of the counts in the twenty-nine-page Third Superseding Indictment are prefaced by a section entitled "The Scheme," in which the Government alleges how the conspiracies were carried out and the general roles of all[4] of the Defendants. Thus, the Court finds that the general nature of the overt acts are related in the Indictment.

Finally, the Court finds that the Government has provided the Defendants with voluminous discovery in this case. As a part of discovery, the Defendants have received the fifty-page master affidavit of Special IRS Agent Danielle Barto, which was submitted in support of the issuance of search warrants for the homes and businesses of several of the Defendants. [Sealed Doc. 53] This affidavit provides details about how the conspiracy is alleged to have operated and contains translations of telephone conversations and text messages relating to transactions involving forged documents and the preparation of tax returns. Although some of the names are redacted, the affidavit also contains the names of persons not mentioned in the

---

[4] Although Defendant Beltran-Chimal contends that she does not appear in association with acts described in any of the "Manner and Means" sections of the Indictment, the Court observes that paragraph 23 of "The Scheme" section alleges that she picked up fraudulently obtained tax refund checks from an address or addresses she controlled or to which she had access so that the checks could be cashed.

Indictment. Based upon the detailed indictment and the information provided in discovery, the Court finds that particularization of the overt acts in furtherance of the conspiracies is not necessary to permit the Defendants to prepare for trial.

*(3) Names of Co-conspirators*

The Defendants also ask that the Court order the Government to particularize the names of all unindicted co-conspirators, who are known to the Government. Specifically, they seek the names of employees of Defendant Blair who allegedly prepared false tax returns at Blair's direction, the names of co-conspirators who participated with Defendant Beltran-Chimal in the overt acts committed in furtherance of the alleged conspiracies, and the names of all co-conspirators and employees whom Defendant Vargas allegedly directed to cash tax refund checks provided by Defendant Valdez.

It is well settled in this circuit that the Government is not required to furnish in a bill of particulars the names of co-conspirators or other persons present when the Defendants allegedly participated in the conspiracy. United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. 1991); see also United States v. Page, 575 F. App'x 641, 643 (6th Cir. 2014) (observing that "the government is not obliged to provide the names of a defendant's alleged co-conspirators"). In this respect,

> [a] defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons, a prerequisite to obtaining a conspiracy conviction. As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators. "It is the grand jury's statement of the 'existence of the conspiracy agreement rather than the identity of those who agree' which places the defendant on notice of the charge he must be prepared to meet."

Id. (internal citations omitted) (quoting United States v. Piccolo, 723 F.2d 1234, 1239 (6th Cir. 1983)). Thus, the Government is not required to reveal the names of unindicted co-conspirators. United States v. Crayton, 357 F.3d 560, 568 (6th Cir. 2004). Nor is it obliged to reveal a list of its witnesses. See United States v. McCullah, 745 F.2d 350, 353 (6th Cir. 1984) (holding that the Sixth Circuit "has firmly established that defense counsel is not entitled to know in advance of trial who will testify for the government").

In the instant case, however, the Court finds that the Government has revealed the names of a number of unindicted co-conspirators in the affidavit of Agent Barto. This includes the name of at least one employee of Defendant Blair, whom the affidavit alleges was involved in the preparation of fraudulent tax documents. The Court finds that further specification of the names of unindicted coconspirators is not necessary for the Defendants to prepare for trial.

### (4) Documents the Government Intends to Present at Trial

Finally, Defendant Blair asks [Doc. 111, p.2] the Court to order the Government to specify all the documents that it intends to produce at trial. The Court need not dwell much on this final request because, as noted above, a bill of particulars is not a vehicle by which a defendant may discover a detailed list of the evidence the Government will present at trial. Salisbury, 983 F.2d at 1375. Moreover, requiring the Government to designate all the evidence that it will introduce at trial exceeds the discovery requirements in Rule 16(a) of the Federal Rules of Criminal Procedure as well as the case law in this circuit and arguably impinges upon the work product of counsel for the United States. See United States v. Richards, 659 F.3d 527, 543-44 (6th Cir. 2011), cert. denied, 132 S. Ct. 2726 (2012) (concluding that even when

discovery is voluminous, the government has no duty to isolate the particular items or documents that are relevant to each count of an indictment); United States v. Warshak, 631 F.3d 266, 296 (6th Cir. 2010) (rejecting an argument that the government direct a defendant to exculpatory evidence within the total discovery provided); United States v. Presser, 844 F.2d 1275, 1285 (6th Cir. 1988) (holding that"[t]he discovery afforded by Rule 16 is limited to the evidence referred to in its express provisions"); United States v. Leggett & Platt, Inc., 542 F.2d 655, 660 n.6 (6th Cir. 1976) (observing that the "work product doctrine clearly applies to the work produced by government attorneys in anticipation of litigation"). Moreover, even if the Court were inclined to order the disclosure of what in essence is an exhibit list by some other means than a bill of particulars, it is doubtful that the Government would be able to produce such a list until much closer to the July 19 trial date. In this regard, the Court's instructions in its typical pretrial order already encourage the parties to exchange exhibits in advance of trial with an eye toward stipulating to their admissibility when possible.

*(5) Conclusion*

In summary, the Court finds that most of the Defendants' requests for particularization are not necessary in this case. However, the Court finds that the Government should designate which federal income tax returns filed by the Defendants that it contends are fraudulent or false. The Government may choose the best method of designating these returns, whether it be the name of the taxpayer, the ITIN numbers, the bates numbers of the returns provided in discovery, or some other means of identification. The Government is (1) to provide this information to defense counsel and (2) to file a notice in the record stating that it has provided a bill of

particulars to counsel on or before **March 11, 2016**.  Accordingly, the Defendants' joint motions for a bill of particulars [**Docs. 44, 111, and 113**] are **GRANTED in part**, in that the Government shall designate which federal income tax returns it is alleging are false or fraudulent, and are **DENIED in all other respects**.

## C.  PINPOINT DISCOVERY

The Defendants move [Doc. 101] the Court to order the Government to identify specifically which documents or items in the voluminous discovery are relevant to each Defendant's alleged participation in the charges asserted in the Third Superseding Indictment. The motion states that the discovery in this case is on seven compact disks or DVD's and that some of the discovery is in Spanish.  The Defendants contend that unless the Government identifies which discovery is relevant to each Defendant, defense counsel will not have sufficient time to review the discovery, to determine whether expert witnesses are necessary, to prepare and litigate pretrial motions, and to prepare witnesses for trial.  The Defendants also argue that ordering pinpoint discovery will not prejudice the Government and would serve to promote judicial economy, the orderly administration of justice, and the efficiency of appointed counsel, thereby reducing the cost of the case to the federal government.  They argue that the failure to require pinpoint discovery will in effect nullify their speedy trial rights because counsel will be required to request long continuances to review discovery and prepare.

The Government objects [Doc. 132] to providing pinpoint discovery.  First, it observes that it has gone "above and beyond the requirements of Rule 16" by having the discovery scanned into a searchable PDF format, by informing the Defendants of the Bates number ranges

of documents based upon the location of their seizure, by locating particular types of documents for defense counsel, and by meeting with counsel and pointing out documents that show the roles of the specific Defendants. Second, Government argues that the Defendants and the Government will likely have different interpretations of which particular documents relate to a specific Defendant. In this regard, the Government argues that in a conspiracy prosecution, every document that is inculpatory to one coconspirator is inculpatory to all the co-conspirators. Third, the Government questions whether the provision of pinpoint discovery will ultimately be more cost-efficient or preserve judicial resources because of the heightened potential for disputes over what the Government should have disclosed and appellate issues regarding whether the Defendants received effective representation. Finally, the Government stresses that the specific designation requested by the Defendants is not required by Rule 16 and would require the Government to disclose its attorney work product in the form of its theories of the case. Thus, the Government urges the Court to deny the motion, particularly in light of the trial continuances giving the Defendants ample time to review the discovery.

At the November 19 hearing, Mr. Gulley stated that the discovery in this case equaled four terabytes of materials. He stated that absent any clarification of Defendant Beltran-Chimal's role in the alleged conspiracies, this "document dump" by the Government compromises his client's right to a speedy trial. He argued that pinpoint discovery would not be onerous to the Government. Moreover, he contended that, although the Court has denied motions for pinpoint discovery in other cases, the amount of discovery in the instant case is several orders of magnitude greater than the discovery in those cases.

Attorneys Roskind, Weiss and Hedrick argued that they could not adequately search the discovery. They explained that they had to open each document or file and then search within that document.

AUSA Dale stated that the Government had taken fifty-two boxes of documents and scanned them into an electronic, searchable format. Additionally, the Government had provided additional data seized from computers in an electronic format. He stated that although the discovery contained hundreds of documents, the documents were generally of the same types, because the Defendants had replicated the same scheme hundreds of times. He believed that the Defendants could join the files in the electronic discovery and then search within those joined files. Moreover, he stated that the case agents had met (or will meet) with each defense attorney for one and one-half hours and had provided the Bates numbers of the range of documents relevant to that attorney's client, as well as pointing out some documents that were not helpful to the Government.

Mr. Gulley agreed that the case agents had offered to meet with counsel and show information relevant to his client.[5] He stated that while he appreciated the opportunity to meet with the case agent, he would still have to conduct his own review of discovery in order to fulfill his role as a zealous advocate.

Mr. Hedrick had met with the case agent, who had outlined the important parts of discovery. He was concerned about the usefulness of searching the electronic discovery because the indictment alleged that the tax returns were filed under false names, but he did not know the false names in order to search for them. When asked by the Court whether he would have to review all of the discovery even if the Government provided pinpoint discovery, Mr. Hedrick

_____

[5] At the time of the November 19 hearing, Mr. Gulley had not yet met with the case agent but was in the process of scheduling such a meeting.

stated that he could spot check that discovery that was designated as irrelevant. He said that the Government would have to pinpoint the discovery for trial anyway, so it was not a burden to require the Government to do so in advance of trial. Mr. Hedrick said that he especially needed to know the names of employees whom Defendant Vargas allegedly asked to cash checks. He said that if he did not know these employees' names, he could not search for them in the discovery. He agreed that he could ask his client who worked for her and stated that he had located one employee, but he was concerned there could be others. He stated that he needed to know the instructions Defendant Vargas allegedly gave to employees because such information was relevant to the existence of a conspiracy, as opposed simply to working at a check cashing business.

Mr. Greene stated that he had also met with a case agent, who designated the range of documents pertinent to his client. He stated that while the tax returns were in English, the other correspondence and transcribed telephone conversations were in Spanish. When the Court suggested that he could hire an interpreter to translate the Spanish discovery, Mr. Greene observed that his client, who is released on conditions, speaks both English and Spanish and had been reviewing the discovery with him.

Ms. Waters stated that she had also met with the case agents but, even after this meeting, she still had questions about what specifically the Government claimed that her client did in furtherance of the conspiracy. She said that she could not prepare to defend her client adequately when she still had questions about her client's alleged participation. Ms. Waters argued that the charges must be sufficiently precise for Defendant Carvahal to prepare for trial. She said that she was not asking for civil discovery but that she did not feel the charges were sufficiently precise in this case.

Mr. Roskind stated that the four terabytes of discovery, the equivalent of about ten million files or documents, was the largest amount of discovery of any criminal case in which he had been involved. He stated that while there are two ways of searching electronic documents, neither worked well in this case due to the mixture of documents—everything from handwritten checks to screen shots from a computer—and the alleged use of false names. He stated that he met with the case agents for an hour and fifteen minutes, and they showed him some thirty documents that they claim are relevant to his client. AUSA Dale stated that agents showed Mr. Roskind the checks that his client is alleged to have cashed, as well as tax documents, mailer envelopes, and recordings of telephone calls. Mr. Roskind said the problem is that the checks from the meeting do not add up to the amount of proceeds the Government is attributing to his client. Thus, at the time of the hearing, he had spent thirty-two hours reviewing about twenty percent of the documents provided in discovery. He stated that if his client chooses to proceed to trial, he will need to know about the rest of the conspiracy and that it would be helpful at that stage to know which Bates numbers relate to each of the Defendants.

Rule 16, of the Federal Rules of Criminal Procedure, and the Court's Order on Discovery and Scheduling [Doc. 40] govern the parties' responsibilities with regard to discovery in this case. These sources provide what should be disclosed and when it should be disclosed, but do not speak to the form that the disclosure should take. See U.S. v. Warshak, 631 F.3d 266, 296 (6th Cir. 2010) (observing that Fed. R. Crim. P. 16 does not require that discovery be indexed or organized in a specific way). In the instant case, the Court finds that the amount of discovery is voluminous, consisting of approximately four terabytes of data. The Court finds that the Government has provided the discovery on disks, has informed defense counsel of the origins of the various types of data, and has met informally with defense counsel and outlined those

documents it believes most relevant to his or her client. While the electronic data is also "searchable," the search function is apparently of little value to defense counsel due to the nature of the materials that are provided in discovery.

The Defendants asks the Court to order the Government to specify which portions of the discovery apply to each Defendant. They maintain that it is within the Court's discretion and inherent powers to regulate discovery. See United States v. Richards, 659 F.3d 527, 543 (6th Cir. 2011), cert. denied 2012 WL 1534481 (2012); Rhodes v. McDaniel, 945 F.2d 117 119 (6th Cir. 1991) (determining that "[t]he district court has broad discretion in regulating discovery"). They contend that such particularization will aid the Defendants, who have differing roles in the conspiracy; will promote the speed and cost-effectiveness of the resolution of this case; and will not prejudice the Government. After carefully considering the arguments of the parties, the Court finds that the requested designation is not necessary in this case.

First, the Court questions whether the Government can effectively isolate all the discovery that applies to each Defendant. As the Government points out, the Defendants in this case are charged with conspiring to defraud the United States, conspiring to commit mail and wire fraud, and conspiring to commit money laundering. It is well settled that "the overt act of one partner in crime is attributable to all," as long as the overt act was performed in furtherance of the conspiracy. Pinkerton v. U.S., 328 U.S. 640, 645 (1946). Accordingly, the Court finds that knowing what parts of the discovery the Government contends are an overt act committed by a particular Defendant will not alleviate the Defendants' need to review those overt acts allegedly committed by their codefendants. In other words, even if the Defendants received pinpoint discovery, they would still have to review the other discovery to prepare for trial. Some of the defense counsel acknowledged this to be the case at the November 19 hearing. This need

to review discovery applicable to codefendants belies the Defendants' arguments that the provision of pinpoint discovery will reduce the cost of the case and promote judicial economy.

Second, the Defendants argue that requiring the Government to produce pinpoint discovery will not prejudice the Government. The Government disagrees with this contention and argues that requiring it to pinpoint which evidence relates to the actions of a particular defendant is essentially requiring it to reveal its trial strategy. Additionally, it argues that any pretrial designation and organization of the discovery for the Defendants sets the stage for future disputes over what should have been disclosed and potential appellate issues regarding the adequacy of defense counsels' review of discovery. The Court finds that ordering the Government to provide pinpoint discovery would require the Government to reveal its theory of the case and trial strategy well in advance of the trial. However, the Court also finds that the Government has already made such a revelation informally in meetings with defense counsel. Accordingly, the Court cannot discern the prejudice in this case.

In the end, the Court can discern neither a benefit to defense counsel—who must ultimately review the discovery attributable to each of the co-conspirators in order to prepare for trial—nor the prejudice to the Government, which has already informally revealed the very information it now opposes providing. Accordingly, this controversy appears to be largely moot. The Court continues to be concerned about balancing counsel's need to review increasingly more voluminous discovery with the defendant's right to a speedy trial. The solution contemplated by the Speedy Trial Act is to recognize that, in complex cases, such as this one, adequate preparation for pretrial proceedings and for trial cannot be accomplished within the time limits established by the Act. See 18 U.S.C. §3161(h)(7)(B)(ii). In the instant case, the trial has been continued [Docs. 56 & 119] over one year to July 19, 2016, to give counsel sufficient time to

review discovery, litigate pretrial motions, and prepare for trial. The Court finds that the provision of the discovery in electronic format, the informal designation of relevant documents by the Government, and the ample additional time granted in continuing this case have ameliorated the sheer volume of the discovery for defense counsel. Accordingly, the Defendant's joint Motion for "Pinpoint" Discovery [**Doc. 101**] is **DENIED**.

### III.    CONCLUSION

For the reasons stated herein, the Court **ORDERS** as follows:

(1) The Defendants' motions [**Docs. 120. 121, 122, 124, 125, & 126**] to join in the motions of Defendant Beltran-Chimal are **GRANTED**;

(2) The Defendants' joint motions for a bill of particulars [**Docs. 44, 111, and 113**] are **GRANTED in part**, in that the Government shall designate by **March 11, 2016**, which federal income tax returns it is alleging are false or fraudulent, and are **DENIED in all other respects**;

(3) The Defendant's joint Motion for "Pinpoint" Discovery [**Doc. 101**] is **DENIED**.

   **IT IS SO ORDERED.**

                    ENTER:

                    _____s/ C. Clifford Shirley, Jr._____
                    United States Magistrate Judge